WILLIAMS & CONNOLLY LLP
Ashley W. Hardin, *pro hac vice*
J. Andrew Keyes, *pro hac vice*
Neelum J. Wadhwani (SBN 247948)
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000
ahardin@wc.com
akeyes@wc.com
nwadhwani@wc.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

*[Additional parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*Tucson Unified School District v. Meta Platforms, Inc., et al.*<br><br>Case No.: 4:24-cv-01382 | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-PHK<br><br>**DEFENDANTS' SECOND MOTION TO PRECLUDE TUCSON UNIFIED SCHOOL DISTRICT FROM RELYING ON ADDITIONAL LATE-DISCLOSED SCHOOL DISTRICT WITNESSES**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: November 13, 2026<br>Time: 2:00 PM<br>Place: Courtroom 1, 4th Floor |

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, at 2:00 PM on November 13, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, 4th Floor, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendants Meta Platforms, Inc., Instagram, LLC, Snap Inc., YouTube, LLC, and Google LLC (collectively "Defendants") will and hereby do move this Court, under Federal Rules of Civil Procedure 16, 26, and 37, for an order granting Defendants' Second Motion to Preclude Tucson Unified School District from Relying on Additional Late-Disclosed School District Witnesses.

This Motion is based on the Memorandum of Points and Authorities submitted herewith, any other papers submitted in connection with the Motion, all other pleadings and papers on file in this action, any matter of which this Court may properly take judicial notice, and any information presented at argument.

Dated: November 6, 2026

Respectfully submitted,

By: */s/ Ashley W. Hardin*

WILLIAMS & CONNOLLY LLP
Ashley W. Hardin, *pro hac vice*
J. Andrew Keyes, *pro hac vice*
Neelum J. Wadhwani (SBN 247948)
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000
ahardin@wc.com
akeyes@wc.com
nwadhwani@wc.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

*[Additional parties and counsel listed on signature pages]*

**TABLE OF CONTENTS**

INTRODUCTION .......... 1

ARGUMENT .......... 4

CONCLUSION .......... 8

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bella+Canvas, LLC v. Fountain Set Ltd.*, 2023 WL 1997702 (C.D. Cal. Feb. 14, 2023) .............. 4

*Chinacast Educ. Corp. v. Chen Zhou Guo*, 2018 WL 7448913 (C.D. Cal. Dec. 28, 2018) ........... 7

*Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175 (9th Cir. 2008) .................................... 7

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) .......................................... 4

*Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006) ..................................................................... 4

*Mary B. v. Kovol*, 2025 WL 2159268 (D. Alaska July 30, 2025) .................................................... 4

## RULES

Fed. R. Civ. P. 16 ........................................................................................................................ 4

Fed. R. Civ. P. 26 ........................................................................................................................ 4

Fed. R. Civ. P. 37 ........................................................................................................................ 4

## INTRODUCTION

This is Tucson's third attempt to add late-disclosed witnesses whose inclusion contradicts the District's prior discovery position. Tucson first tried to add four never-deposed witnesses (two school principals, a student, and a Dean of Students) on the last day of discovery 18 months ago (and then withdrew the two principals when Defendants objected). It then added two more new witnesses (different high school principals) on September 14, 2026, which Defendants have moved to strike. *See* ECF No. 3581 ("Defs.' Mot."). Tucson now seeks, for a ***third time***, to add new witnesses. On October 29, 2026—the day oppositions to motions *in limine* and Defendants' motion to strike Tucson's September late-added witnesses were due—Tucson purported to "amend" its preliminary witness list to add three more new witnesses—a never-deposed teacher and two more never-deposed school principals (including one of the two it withdrew as a trial witness almost 18 months ago).[1] The Court should strike these witnesses from Tucson's witness list and enter an order making clear that it cannot add any additional trial witnesses.

Tucson took clear positions during discovery: It repeatedly refused to allow discovery into school-level witnesses, including principals and teachers, and it insisted that it would prove its case using ***district-level*** employees.[2] Tucson now seeks to depart from those positions. Having successfully kept Defendants from taking the necessary discovery into school-level witnesses and documents, Tucson now claims that "[p]rincipals [and teachers] are the District employees best situated to explain the building-level harms at issue: classroom disruption, discipline, safety

---

[1] Tucson's updated list adds six witnesses in total. *See* Tucson's Updated Prelim. Trial Witness List, ECF No. 3622 at 2–4. Three of them—Holly Hammel, Brian Lambert, and Dr. Sabrina Salmon—are district-level administrators who were on Tucson's original trial witness list and who submitted affidavits that Tucson's expert, Dr. Bryce Ward, relied on. Defendants filed a motion seeking to bar Dr. Ward from offering opinions that were based on hearsay from these three witnesses after Tucson dropped them as trial witnesses. *See* ECF No. 3594. Tucson has apparently added these witnesses back to its witness list in response to that motion, but says that it "does not moot Defendants' motion." ECF No. 3623 at 3 n.1. This Motion does not seek to bar those three witnesses from testifying at trial.

[2] The school district plaintiffs agreed to preserve and produce documents only for personnel with "primary responsibility" for student social media issues and some school-level custodians, and represented they would prove their cases with district-level evidence of district-level harms. *See* Ex. A (July 21, 2023 Ltr. from M. Weinkowitz); June 13, 2025 CMC Hr'g Tr. at 33:5–11.

incidents, and the administrative and teacher time diverted to managing students' compulsive use of Defendants' platforms" and wants to be able to have cherry-picked ones testify at trial. *See* ECF No. 3618 ("Opp.") at 1. The Court should not countenance this gamesmanship.

Tucson claims it now needs these witnesses to fill a gap in its evidence. *See* Opp. at 1, 4–5. But any gaps in Tucson's evidence are a direct result of its own strategic choices. Defendants asserted from the beginning that teachers and principals were important to the cases. Tucson said no. It maintained that it would prove its case through district-level evidence and district-level witnesses. Yet Tucson now claims the school-level witnesses are necessary to tell "the whole story." Opp. at 6. Tucson may regret its strategic choices, but Defendants cannot be made to suffer the consequences of those choices 18 months after the close of discovery, more than a year after Defendants' experts served their reports, more than a year after Defendants moved for summary judgment, and just a few months before trial. Tucson claims that it has a newfound "understanding of the evidence" and of "who the right witnesses are for trial," Opp. at 9, but it did not just recently "understand" that school principals and teachers are "well-positioned to describe th[e] burdens" that Tucson has been asserting since it filed its complaint, Opp. at 4. Indeed, one of the three witnesses Tucson added on October 29—Kevin Amidan—was one of the principals whom Tucson purported to add on the last day of discovery and voluntarily withdrew when Defendants challenged him as untimely disclosed. Tucson's belated efforts to identify additional witnesses it now considers better suited to present its case do not justify disregarding the Court's discovery deadlines.[3]

[3] Tucson's suggestion that the Court can deny Defendants' motion to strike Tucson's late-disclosed witnesses because Defendants did not put the motion on a list of motions *in limine* to meet and confer over is meritless. Tucson's complaint is not that Defendants failed to meet and confer. Rather, it complains that Defendants did not call the motion a motion *in limine*. The motions to strike are not motions *in limine*, but in any event, the parties met and conferred over the motion to strike on the same day they met and conferred on motions *in limine* and the motion was filed on the same timeline. Plaintiff Charleston County School District, on the other hand, filed a motion *in limine* on October 16, without raising the issue or meeting and conferring about it directly with Defendants. *See* ECF No. 3586. Defendants had no intention of raising that ticky-tack issue with the Court, but Tucson's arguments necessitate correcting the record of what took place during the meet-and-confer process.

## THE LATE-DISCLOSED WITNESSES

On October 29, 2026—six weeks after preliminary trial witness lists were due—Tucson disclosed two school principals, Kevin Amidan and Dr. Michael Konrad, and an English teacher, Heather Bates, for the first time as trial witnesses.

**Mr. Amidan.** Tucson already tried to add Mr. Amidan on the last day of fact discovery but abandoned him once Defendants challenged that disclosure. *See* Defs.' Mot. at 3 & n.7. There is no excuse for Tucson trying to add him again now. Tucson clearly knew about him during discovery, but chose to drop him rather than defend his late addition before the Court. It should not be allowed to add him now that Defendants, relying on that abandonment,[4] never obtained his custodial file or deposed him, and prepared their experts, summary judgment briefing, and trial strategy on a record without him.

**Dr. Konrad.** Although Tucson listed Dr. Konrad in its interrogatory answers and designated him as a custodian, *see* Ex. D (Tucson's Third Am. Answers to Defs.' Interrog. (Set 1)) at 6, it never identified him as one of its "priority witnesses"—by agreement of the parties, only the plaintiff's "priority witnesses" would be deposed—never listed him on any trial witness list before October 29, and he was never deposed. Further, Tucson identified him in discovery for his former ***district-level role***. In its Plaintiff Fact Sheet, Tucson identified Michael Konrad in his role as "Middle School Director" as a person most knowledgeable about student use of social media on school property and the impact of such use on your district for the 2017–2018 school year. *See also* Ex. D at 6 (identifying Michael Konrad as a person knowledgeable on the same subject matter as all other district-level employees: "Impact of students' use of social media on school operations, including discipline and student engagement"). Once again, therefore, Tucson knew about Dr. Konrad and could have and should have listed him as a priority witness during discovery and disclosed that it wanted him to provide a principal's perspective. It did not. Now it is too late.

[4] *See* Ex. B (Apr. 25, 2025 Email from A. Brane) (listing "Kevin Amidan" on the list of individuals Tucson "Will Not Rely On").

**Ms. Bates.** Tucson has never previously disclosed Ms. Bates, a teacher—or any other teacher—as a witness with relevant knowledge. She was not identified in Tucson's interrogatory responses or Plaintiff Fact Sheet, not designated as a custodian, and Tucson was unable to confirm whether she has ever been placed on a litigation hold. As a result, her contemporaneous materials (emails, messages, and files) may no longer exist in full, and any custodial file that Tucson might produce now cannot cure that gap. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (finding prejudice where a party was "forced to rely on incomplete and spotty evidence"). Further, Ms. Bates is a classroom teacher—a category of witness the school districts fought for years to keep out of discovery. *See* Ex. A; June 13, 2025 CMC Hr'g Tr. at 33:5–11.

## ARGUMENT

A party that fails to disclose a witness as required by Rule 26(a) or (e) "is not allowed to use that . . . witness" at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 16 independently supports exclusion. A scheduling order "may be modified only for good cause," Fed. R. Civ. P. 16(b)(4), and that inquiry "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "If that party was not diligent, the inquiry should end." *Id.*; *see also Mary B. v. Kovol*, 2025 WL 2159268, at *2–5 (D. Alaska July 30, 2025) (granting motion to exclude late-disclosed witnesses under Rule 16 and Rule 37).

"In addition to showing diligence, a party seeking to reopen discovery after time has expired must show that their failure to timely seek relief was due to excusable neglect." *Bella+Canvas, LLC v. Fountain Set Ltd.*, 2023 WL 1997702, at *3–4 (C.D. Cal. Feb. 14, 2023) (concluding that a party's decision to wait "until less than two months before trial to seek relief weigh[ed] against finding that [the party] was diligent" and declining to reopen discovery). "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Id.* (quotation omitted).

Tucson concedes that it bears the burden of showing that its untimely disclosure is substantially justified or harmless. *See* Opp. at 4. It has not met that burden here. Indeed, Tucson admits that it has not exercised diligence. It admits that there is no reason why it could not have or

should not have disclosed these witnesses earlier in discovery. Its only excuse is that it is just now learning "who the right witnesses are for trial" and has "first spoke[n] with these principals [and the teacher] only recently." Opp. at 9. That Tucson did not know until recently "what [those witnesses] knew or whether they would testify," *id.*, is a failure on Tucson's part that is neither justifiable nor excusable.

Tucson defends the addition of these three witnesses on the same bases that it defends the two principals added on September 14. None holds water.

*First*, Tucson's claim that "principals' [and teachers'] testimony is important to a full and fair presentation of Tucson's case," Opp. at 4, runs contrary to its position for years, throughout the discovery period, that it would prove its case based on ***district-level*** evidence and therefore discovery from school-level personnel was off-limits. *See supra* note 2. That Tucson has had a change of heart about the best way to present its case at trial 18 months after the close of discovery and a year after Defendants moved for summary judgment is not a license to disclose five new witnesses shortly before trial and attempt to change the complexion of the case to plug evidentiary holes Tucson should have tried to fill long ago.

Nor can Tucson rewrite the discovery record by claiming that school-level employees were part of its case all along. *See* Opp. at 1, 4–5. The record shows the opposite. Indeed, Tucson's Opposition shows the opposite. If it already had principal- and teacher-level evidence, it would not need to add those witnesses now. When Tucson first identified the custodians whose files it would search, every one of them held a ***district-level*** position. *See* Ex. E (June 27, 2024 Ltr. from A. Brane). No sitting principal or teacher appeared on its custodian list. That a few of those administrators had served as principals years earlier does not change the capacity in which Tucson designated them. The lone sitting principal Tucson now points to, Dr. Konrad, became a custodian only because Defendants asked for his custodial file after Tucson identified him as a person with knowledge, and Tucson identified him for his prior district-level role as Middle School Director. *See* Ex. F (July 22, 2024 Ltr. from L. Bell) at 1–2 (requesting that every individual identified in response to Interrogatory 1 be made a custodian). And Tucson refused to produce school-level data when Defendants sought it in anticipation that Tucson might offer evidence of school-level effects

at trial. For discipline, bullying, mental-health support, social-media-related discipline, and student health conditions, Tucson produced only aggregate district-wide reporting and "did not agree to produce this reporting broken down by school site," citing the "significantly increased burden and ***limited or no relevance of the additional data***." Ex. G (Mar. 3, 2025 Ltr. from A. Brane) at 3–4 (RFPs 29, 30, 32, 33, 34, 36, 67, and 72) (emphasis added). Tucson cannot tell Defendants that school-site information has "limited or no relevance" when Defendants seek it in discovery, Ex. G, and then credibly tell the Court that school-site witnesses are essential to a "full and fair presentation" of its case at trial, Opp. at 4.[5]

*Second*, Tucson's rationalization that the late-disclosed principals replace Frank Armenta, "a document custodian and potential trial witness" whom it "expected to list . . . to provide the perspective of a longtime high school principal," Opp. at 1, 9, is unsupported by the record. Tucson disclosed Mr. Armenta in discovery as "Assistant Superintendent – Leadership & Student Success," a ***district-level*** witness, not as a principal. *See* Ex. C (May 22, 2024 Ltr. from A. Brane); Ex. D. It never identified him as a "priority witness" (by agreement of the parties, the potential trial witnesses who could be deposed) and it did not list him on its original trial witness list that was served on September 24, 2025. *See* Tucson's Updated Witness List, ECF No. 3622; Ex. H (MDL Bellwether Sch. Dist. Pls.' Prelim. Witness Lists). Nor did Tucson revise its prior disclosures after Mr. Armenta left the District at the end of the 2025–2026 school year, several months ago. Tucson did not actually "expect[] to list" Mr. Armenta as a trial witness, Opp. at 9, and his departure from Tucson months

---

[5] Tucson took the same position before Judge Kang when Defendants sought the incident-level narrative records in Synergy, Tucson's student information system. Tucson represented that its "claims do not rely on harm to a particular student, but rather harm sustained by [Tucson] as an aggregation of individual occurrences throughout the district," and that "production of aggregate data from Synergy is proportionate and provides all the relevant information." ECF No. 1949 at 13–15. Defendants, for their part, had structured their examination of Tucson's Rule 30(b)(6) designee, Julie Shivanonda, "based on TUSD's representations that their claims were based on 'aggregate data.'" *Id.* at 11. And when Defendants argued that they needed the underlying records to test that designee's testimony about incidents in Tucson's schools, Tucson pointed them not to principals or teachers, but to district-level administrators: "the Director of Student Relations and four Regional Assistant Superintendents – individuals Ms. Shivanonda identified as those with whom she would have discussions to determine the impact of social media on disciplinary incidents at the school district." *Id.* at 14.

ago does not justify the late addition of any, much less four, new principals and a teacher.

*Third*, forcing Defendants to review custodial files for five new witnesses and prepare for five depositions in the months of December and January is plainly prejudicial. Tucson admits that it cannot provide the custodial files of the two witnesses it disclosed in September until Thanksgiving—two months after it disclosed them. Tucson has not indicated when Defendants would receive the custodial files for the outstanding witnesses. Depositions would then have to be compressed into December or January when Defendants are preparing two cases for trial in February, including upcoming deadlines for exhibit lists, trial stipulations, and other exchanges that may be impacted by new information from these new witnesses. "Having to commit any amount of trial preparation on late-disclosed discovery materials is, in itself, a harm." *Chinacast Educ. Corp. v. Chen Zhou Guo*, 2018 WL 7448913, at *7 (C.D. Cal. Dec. 28, 2018) (quotation omitted); *see also Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008).

And as Defendants have already pointed out in briefing the two other pending motions to strike, depositions will not, in any event, cure the prejudice. Tucson operates over 80 schools serving roughly 40,000 students and employs more than 2,800 teachers. One hand-picked teacher and four hand-picked principals cannot say anything reliable about a claimed district-wide problem, though Tucson would likely argue otherwise to the jury if it is permitted to call them. Even if Defendants could get their custodial files and depose them,[6] there is no evidence that their experience, in one classroom or one school, is representative of what was happening across the District, in thousands of other classrooms in dozens of other schools. Nor can cross-examination at trial cure the prejudice. By definition, these witnesses, whose experience is limited to their own classroom or school, cannot provide evidence about what was happening across the District. And Defendants cannot locate and present contrary accounts from other teachers and other principals, given the District's size and that Defendants have only been notified of the import of school-level accounts mere months before trial. Tucson's prior resistance to Defendants' request for school-

[6] Ms. Bates was never placed on a litigation hold prior to October 2026, and Tucson could not represent during the parties' meet and confer on this motion whether she had yet been added to one.

level data also hinders Defendants' ability to rebut live testimony with contemporaneous school records. It would be unfair for the jury to credit Tucson's one-sided presentation as the "only" school-level evidence when Defendants were never permitted discovery on the topic. To respond fairly, Defendants would need comparative discovery from other teachers and principals in other schools, and access to school-level records—the very discovery Tucson resisted, and which cannot be completed before trial.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court preclude Tucson from calling Mr. Amidan, Dr. Konrad, or Ms. Bates at trial or otherwise relying on them for any purpose, and order that Tucson may not add any new witnesses absent leave of the Court.

If the Court denies this relief, Defendants respectfully request, in the alternative, that the Court (1) vacate the February 8 trial date as to Tucson; (2) order Tucson to produce each witness's complete custodial file, together with a sworn affidavit explaining the steps taken to preserve Ms. Bates' documents since the inception of this lawsuit and identifying the categories of documents that were not preserved; (3) require Tucson to make each witness available for a deposition at Defendants' convenience; (4) permit Defendants reasonable comparative discovery from other Tucson employees, including but not limited to the custodial files of other teachers and school-based data; (5) allow Defendants to identify additional witnesses; (6) allow Defendants to supplement their expert reports to account for any information learned from the school-level discovery; and (7) permit Defendants to re-file their summary judgment motion. Tucson's case would then need to be rescheduled after the other bellwether trials.

Dated: November 6, 2026

Respectfully submitted,

*/s/ Ashley W. Hardin*

ASHLEY W. HARDIN, *pro hac vice*
ahardin@wc.com
J. ANDREW KEYES, *pro hac vice*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

*/s/ Ashley M. Simonsen*
Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones (*pro hac vice*)
Paul W. Schmidt (*pro hac vice*)
Christian J. Pistilli (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com
Email: cpistilli@cov.com

Beth A. Wilkinson (*pro hac vice*)
Rakesh Kilaru (*pro hac vice*)
Jolee Porter (*pro hac vice*)
Matthew R. Skanchy (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4010
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
jporter@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

Moira K. Penza (*pro hac vice*)
WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8925
Facsimile: (202) 847-4005
mpenza@wilkinsonstekloff.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram, LLC*

/s/ Jonathan H. Blavin
JONATHAN H. BLAVIN (SBN 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel.: (415) 512-4000

E. MARTIN ESTRADA (SBN 223802)
Martin.Estrada@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
VICTORIA A. DEGTYAREVA (SBN 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100
Facsimile: (213) 687-3702

ALLISON BROWN, *pro hac vice*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON, *pro hac vice*
jessica.davidson@kirkland.com
JOHN J. NOLAN, *pro hac vice*
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

**ATTESTATION**

I, Ashley W. Hardin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: November 6, 2026

By: *<u>/s/ Ashley W. Hardin</u>*
Ashley W. Hardin